**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X

THERESA SPIEGEL,

                 *Plaintiff*

*v.*

ESTÉE LAUDER INC., ESTEE LAUDER COMPANIES, INC.,
ELC BEAUTY LLC, ESTEE LAUDER INTERNATIONAL INC.,
LUSINE JACOBS, NOE ARTEAGA, ANGELINA MILLER
and JENNE EUGENE,

                 *Defendant(s)*

-------------------------------------------------------------------------X

**23-cv-11209(DLC)(OTW)**

**NOTICE OF
CROSS MOTION
and OPPOSITION TO
DEFENDANTS' MOTION
TO DISMISS**

      **PLEASE TAKE NOTICE** that Plaintiff Theresa Spiegel, through her attorneys Tanner & Ortega, LLP, requests that this Court, pursuant to Federal Rule of Civil Procedure 15(a), grant the foregoing cross-motion granting leave to file the annexed proposed 2nd Amended Complaint and further deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

      **PLEASE TAKE FURTHER NOTICE** that Plaintiff submits the following Memorandum of Law in support of the cross-motion and Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint.

Dated: April 5, 2024
      New York, NY

                               Tanner & Ortega, LLP
                               Hugo Ortega, Esq.
                               299 Broadway — 17th Floor
                               NY, NY 10007
                               (212) 962–1333
                               *Attorney for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES…………………………………………………………………2

PRELIMINARY STATEMENT…………………………………………………….……...5

STATEMENT OF RELEVANT FACTS …………………………………………………6

ARGUMENT…………………………………………………………………....………7

CONCLUSION…………………………………………………………………………..25

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Acito v. IMCERA Grp., Inc.,*
    47 F.3d 47, 55 (2d Cir. 1995)...........................................................................................11

*Allison v. Clos-ette Too, L.L.C.,*
    No. 14-cv-1618 (LAK) (JCF), 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015)..............11

*Ambac Assur. Corp. v. EMC Mortg. Corp.,*
    No. 08-CV-9464, 2009 U.S. Dist. LEXIS 26456, 2009 WL 734073, at *2 (S.D.N.Y. Mar.
    16, 2009)..........................................................................................................................10

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937 (2009)....................................................................8, 12, 13

*Beatie & Osborn LLP v. Patriot Sci. Corp.,*
    431 F. Supp. 2d 367, 398 (S.D.N.Y. 2006)........................................................................8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955 (2007)................................................................8, 9, 12, 13

*Bliss v. Putnam Valley Cent. Sch. Dist.,*
    No. 06-CV-15509 (WWE), 2011 U.S. Dist. LEXIS 35485, at *27 (S.D.N.Y. March 24,
    2011)..................................................................................................................................23

*Burlington Indus., Inc. v. Ellerth,*
    524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1988)................................................12

*City of N.Y. v. Grp. Health Inc.,*
    649 F.3d 151, 157 (2d Cir. 2011).......................................................................................11

*Crosby v. Stew Leonard's Yonkers LLC,*
    No. 22-CV-4907 (KMK), 2023 U.S. Dist. LEXIS 174166 (S.D.N.Y. Sep. 28,
    2023)..............................................................................................................................8, 10

*Feingold v. New York,*
    366 F.3d 138 (2d Cir. 2004)..............................................................................................18

*Fisher v. Vassar Coll.,*
    114 F.3d 1332, 1334 (2d Cir. 1997)...................................................................................13

*Foman v. Davis,*
    371 U.S. 178, 181 (1962).............................................................................................5, 11

*Frio Energy Partners, LLC. v. Finance Tech. Leverage, LLC,*
    F. Supp. 3d, 2023 U.S. Dist. LEXIS 110748, 2023 WL 4211035, at *19 (S.D.N.Y. June
    27, 2023)..............................................................................................................................8

*Galabya v. N.Y.C. Bd. of Educ.,*
  202 F.3d 636, 640 (2d Cir. 2000)......................................................................................18

*Gallagher v. Delaney,*
  139 F.3d 338, 342 (2d Cir. 1998)..............................................................................12, 13

*Gomez v. City of N.Y.,*
  No. 12- CV-6409 (RJS), 2014 U.S. Dist. LEXIS 113674, at *16 (S.D.N.Y. Aug. 14,
  2014)....................................................................................................................................22

*In re Facebook, Inc., IPO Sec. & Derivative Litig.,*
  986 F. Supp. 2d 428, 472 (S.D.N.Y. 2013)........................................................................11

*Kroshnvi v. U.S. Pack Courier Servs., Inc.,*
  771 F.3d 93, 109 (2d Cir. 2014)..........................................................................................10

*Lawtone-Bowles v. City of N.Y.,*
  No. 17-CV-8024 (WHP), 2019 U.S. Dist. LEXIS 25136, at *13 (S.D.N.Y. Feb. 15,
  2019)....................................................................................................................................23

*Lipsky v. Commonwealth United Corp,*
  551 F.2d 887, 893 (2d Cir. 1976).........................................................................................8

*Littlejohn v. City of New York,*
  No. 14-1395-cv, 795 F.3d 297, 2015 U.S. App. LEXIS 13475, 2015 WL 4604250, at *6
  n.7 (2d Cir. Aug. 3, 2015).............................................................................12, 13, 19, 21

*Liu v. Kueng Chan,*
  No. 18-CV-05044 (KAM) (SJB), 2020 U.S. Dist. LEXIS 34969, at *12 (E.D.N.Y. Feb.
  28, 2020)..............................................................................................................................24

*Lundy v. Catholic Health Sys. of Long Island, Inc.,*
  711 F.3d 106, 114 (2d Cir. 2013)........................................................................................24

*Lynch v. Southampton Animal Shelter Found., Inc.,*
  278 F.R.D. 55, 63 (E.D.N.Y. 2011).......................................................................................8

*Pallonetti v. Liberty Mut.,*
  No. 10-CV-4487 (RWS), 2011 U.S. Dist. LEXIS 14529, at * 3 (S.D.N.Y. Feb. 11,
  2011)....................................................................................................................................24

*Paupaw-Myrie v. Mount Vernon City Sch. Dist.,*
  653 F. Supp. 3d 80, 101-103 (S.D.N.Y. 2023)...................................................................22

*Porsch v. LLR, Inc.,*
  380 F. Supp. 3d 418, 429 (S.D.N.Y. 2019)...........................................................................8

*Richards v. N.Y.C. Bd. of Educ.,*
  668 F. Supp. 259, 265 (S.D.N.Y. 1987)..............................................................................12

*Robinson v. 12 Lofts Realty, Inc.*,
    610 F.2d 1032, 1043 (2d Cir. 1979)................................................................................12

*Roe v. City of New York*,
    151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)......................................................................8

*Terry v. Ashcroft*,
    336 F.3d 128, 138 (2d Cir. 2003)...................................................................................18

*Tex. Dep't of Cmty. Affairs v. Burdine*,
    450 U.S. 248, 101 S. Ct. 1089 (1981).............................................................................12

*United States v. Stanley*,
    416 F.2d 317, 318 (2d Cir. 1969)...................................................................................14

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015)..............................................................................................13

*Williams v. Citigroup Inc.*,
    659 F.3d 208, 212–13 (2d Cir. 2011)..............................................................................11

**Statutes**

29 USC §206.......................................................................................................................6

42 USC §1981..............................................................................................................*passim*

Article 19, NYLL §650...................................................................................................6, 24

Federal Fair Labor Standards Act Of 1938....................................................................6, 24

Federal Rule of Civil Procedure 1........................................................................................5

Federal Rule of Civil Procedure 12(f)..............................................................................8, 10

Federal Rule of Civil Procedure 15, *et al*...........................................................................5

Federal Rule of Civil Procedure 15(a)..........................................................................5, 7, 10

New York City Human Rights Law §8-101..............................................................6, 13, 18, 21

New York State Human Rights Law §290.................................................................6, 13, 18, 21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
THERESA SPIEGEL,

                                                    *Plaintiff*

v.

ESTÉE LAUDER INC., ESTÉE LAUDER COMPANIES, INC.,        **23-cv-11209(DLC)(OTW)**
ELC BEAUTY LLC, ESTÉE LAUDER INTERNATIONAL INC.,
LUSINE JACOBS, NOE ARTEAGA, ANGELINA MILLER
and JENNE EUGENE,

                                                    *Defendant(s)*
--------------------------------------------------------------------------X


### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FRCP §15 (a) and (c) and PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 15(a), Theresa Spiegel ("Plaintiff") through her Attorneys Hugo Ortega, Esq., respectfully move the Court for leave to file the attached Second Amended Complaint. Rule 15 provides in relevant parts that "[a] party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

While considering this motion, the court must keep in mind that all Federal Civil Procedure Rules should "be construed administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added). It is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of [] mere technicalities." *Foman v. Davis,* 371 U.S. 178, 181 (1962) (citing Fed. R. Civ. P. 1 and 15 in holding that amendment of a complaint should be freely given so a Plaintiff is "afforded an opportunity to test

his claim on the merits.").

Plaintiff submits this memorandum of law, together with her proposed Second Amended Complaint, and exhibits thereto, in support of Plaintiff's Cross Motion to File an Amended Complaint to amend those portions of her complaint that the Defendants have sought to dismiss.

Plaintiff Theresa Spiegel has alleged Hostile Work Environment Discrimination Based On Race, Age And Gender Orientation Under New York City Human Rights Law §8-101 And New York State Human Rights Law §290 Et Seq; Unlawful Racially Discriminatory Conduct In Violation Of Section 1981; Negligent Infliction Of Emotional Distress As Against Defendants Lusine Jacobs, Noe Arteaga And Angelina Miller And Jenne Eugene; Negligent Hiring/Retention And Supervision As Against Def. ELC Beauty Llc; Violation Of The Federal Fair Labor Standards Act Of 1938 (29 U.S. Code § 206 – 2016)(FLSA), The New York Labor Law (Article 19, NYLL §650 Et Al.)(NYLL), and Retaliation In Violation Of 42 U.S.C. §1981

Allowing Plaintiff to file the Amended Complaint would serve justice and promote judicial efficiency. Plaintiffs' motion accompanied by her Verified Amended Complaint sufficiently tolls the statute of limitations and there would be no substantial or undue prejudice, bad faith, undue delay, or futility, therefore, and for the reasons set forth below, Plaintiff's cross motion for leave to file Amended Complaint should be granted and Defendants' motion to dismiss denied.

## STATEMENT OF RELEVANT FACTS

On November 14, 2022, Plaintiff Theresa Spiegel was terminated from her employment with the Defendants ELC in violation of New York City, State and Federal law predicated on impermissible discriminatory policies, practices and conduct. Plaintiff asserts that Defendant

ELC made ad hoc discriminatory decisions against her, a white cis-gender female, that favored minority and LGBT employees, in order to avoid an economic backlash against their Company by powerful racial and sexual minority interest groups seeking, as it were, structural and financial advantages for their members in the management and operations of the Company. In particular, Plaintiff asserts that she was a model employee store supervisor who suddenly became the target of Defendant ELC management's arbitrary and discriminatory treatment when she sought to enforce Defendant's existing employee conduct policy as against another employee who she managed and who consistently flouted the rules premised on his status as an activist employee belonging to aforesaid racial and sexual minority interest groups. Plaintiff alleges that she received such discriminatory treatment because Defendant ELC sought to accommodate the demands of the pressure groups to avoid greater financial losses and thus considered her position economically expedient relative to the blow-back loss they would sustain if they insisted on enforcement of their existing employee conduct policy as against the recalcitrant activist employee.

Defendant has moved to dismiss Plaintiff's complaint claiming among other things that the complaint alleges irrelevant facts and or fails to state a cause of action among other basis to dismiss. Plaintiff here, now pursuant to Rule 15(a) seeks to amend her Complaint to make said properly pleaded claims more cognizable.

## ARGUMENT

### POINT I
### PLAINTIFF'S PARAGRAPH 26 AND EXHIBITS 1-5 PROVIDE RELEVANT FACTUAL CONTEXT TO HER COMPLAINT THAT MAKE HER DISCRIMINATIONS CLAIM AGAINST  ELC DEFENDANTS MORE COGNIZABLE  AND THUS MUST NOT BE STRICKEN

The Second Circuit has instructed that "ordinarily" a district court should not "decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *see also Frio Energy Partners, LLC. v. Finance Tech. Leverage, LLC*, F. Supp. 3d, 2023 U.S. Dist. LEXIS 110748, 2023 WL 4211035, at *19 (S.D.N.Y. June 27, 2023) (quoting *Lipsky*). "Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided." *Id.; see also Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 398 (S.D.N.Y. 2006) ("The Second Circuit has made clear that district courts should be wary when deciding whether to grant a Rule 12(f) motion on the ground that the matter is impertinent and immaterial."). "[T]o prevail on a Rule 12(f) motion to strike, [*3] the movant must show '(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant.'" *Lynch v. Southampton Animal Shelter Found., Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011) (quoting *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)); *see also Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 429 (S.D.N.Y. 2019) ("Motions to strike under Rule 12(f) 'should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.'"). *Crosby v. Stew Leonard's Yonkers LLC*, No. 22-CV-4907 (KMK), 2023 U.S. Dist. LEXIS 174166 (S.D.N.Y. Sep. 28, 2023)

Here, it is clear that the Defendants cannot argue that Paragraph 26 has no relation or logical connection to the subject matter. Indeed, Paragraph 26 provides essential context without which the complaint would fail under the Twombly/Iqbal Test. See *Ashcroft v. Iqbal*, 556 U.S.

662, 129 S. Ct. 1937 (2009) See also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). Significantly, Plaintiff Spiegel had been employed by ELC for more than a year, starting in 2019, and had experienced no issues until a series of external incidents influenced by BLM and its associates arose to directly influence policy made by Defendants management. Clearly, thus without providing the relevant factual predicate to her discrimination, the complaint would lack the core constituent factual elements of motivation that precipitated her impermissible termination These events had a significant impact on her employment, altering her working conditions substantially. Before the involvement of BLM, her work environment was stable and positive. However, the emergence of Defendants' relationship to BLM and its affiliates introduced significant shifts in company policy, enabling a bias in favor of individuals with activist ideologies and discriminating against those who did not share these views. Arteaga, who identifies with these activist' principles and is affiliated with two activist groups, received preferential treatment, allowing Arteaga to bypass standard company regulations. Conversely, Spiegel, who strove to adhere to company policies, was subjected to hostility and neglect, receiving no support or guidance when she sought assistance. Defendant Estée Lauder sided with Arteaga, validating his three complaints against Spiegel as indicators of misconduct, despite Spiegel's allegations of Arteaga's dishonesty, which the company opted not to investigate.

Clearly, upon the foregoing, Plaintiff has demonstrated that the factual recitations set forth in Paragraph 26 and supported by Exhibits 1-5 are material, relevant and thus admissible. Further, Defendants' claim that the allegations about Trump, Black Lives Matter and LGBTQ interest groups would prejudice the Defendants entirely elides the critical fact that these factual predicates provide essential elements underpinning the Defendants' hard and determinative

calculus in discriminating against the Plaintiff and thus are demonstrative of the roots of the impermissible employment treatment Plaintiff was subject to.

Defendants relatedly have asserted that there is no way for them to defend against these allegations as they are inflammatory claims and Defendants have no personal knowledge of them. The mere fact that a claim may paint a picture of the Defendant's conduct that may be revelatory if otherwise inflammatory is not enough to say that the claim is prejudicial and must be dismissed. The Defendants personally consorted with BLM and other interests groups in a manner consistent with a critical concern for their bottom line at the expense of Plaintiff and though this might not cut a pretty picture of the Defendants, it does not follow that same is prejudicial, that is, that said picture are not also the facts which clearly show misconduct. ("[O]rdinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone"); *Ambac Assur. Corp. v. EMC Mortg. Corp.*, No. 08-CV-9464, 2009 U.S. Dist. LEXIS 26456, 2009 WL 734073, at *2 (S.D.N.Y. Mar. 16, 2009) (denying motion to strike certain allegations because they "may bear" on Plaintiff's claims). Upon the foregoing, Plaintiff avers that this Court should deny Defendants' Rule 12(f) request in its entirety as overbroad and premature. *Crosby v. Stew Leonard's Yonkers LLC,* 2023 U.S. Dist. LEXIS 174166, *6.

## POINT II
## PLAINITIFF HAS AMENDED HER COMPLAINT TO MAKE SAME MORE COGNIZABLE

Plaintiffs cross Motion should be granted in the interests of justice. "The Federal Rules provide that courts 'should freely give leave [to amend] when justice so requires.'" *Kroshnvi v. U.S. Pack Courier Servs., Inc.,* 771 F.3d 93, 109 (2d Cir. 2014) (quoting Fed. R. Civ. P. 15(a)(2)). Justice so requires absent factors "such as undue delay, bad faith or dilatory motive on the part of

the movant...undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment, etc.," which are wholly absent here. *Foman,* 371 U.S. 178, 182 (1962). While decisions regarding leave to amend are left to the court's discretion, "there must be a good reason to deny the motion." *Acito v. IMCERA Grp., Inc.,* 47 F.3d 47, 55 (2d Cir. 1995)(citation omitted).

The Courts apply a "permissive standard" to such motions and have a "strong preference for resolving disputes on the merits," all of which favors granting leave to amend. *Williams v. Citigroup Inc.,* 659 F.3d 208, 212–13 (2d Cir. 2011) (quotation omitted); see also In *re Facebook, Inc., IPO Sec. & Derivative Litig.,* 986 F. Supp. 2d 428, 472 (S.D.N.Y. 2013) ("Generally, amendments are favored because they tend to facilitate a proper decision on the merits.") (internal quotation and citation omitted). To defeat this Motion, Defendants must overcome this permissive standard and a strong preference for resolving claims on their merits and meet their burden of demonstrating bad faith, prejudice, or futility. See *City of N.Y. v. Grp. Health Inc.,* 649 F.3d 151, 157 (2d Cir. 2011) ("The rule in our circuit is to allow a party to amend its complaint unless the nonmovant demonstrates prejudice or bad faith."); *Allison v. Clos-ette Too, L.L.C.,* No. 14-cv-1618 (LAK) (JCF), 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015) (party opposing motion bears the burden of establishing futility). Defendants cannot do so and thus, the Motion should be granted.

Here Plaintiff has amended her complaint in the following manner:

## POINT II(A-B)
## THE AMENDED COMPLAINT PLEADS A PLAUSIBLE CLAIM AGAINST DEFENDANTS AND SHOULD NOT BE DISMISSED

### A.  Standard of Review Under Fed. R. Civ. P. 12(b)(6)

In making the plausibility determination, the court is to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Of course, the court must proceed at all times in a fair and deliberative fashion, alert to any unconscious bias that could affect decision making. In making the plausibility determination, the court must be mindful of the "elusive" nature of intentional discrimination. *See Burdine*, 450 U.S. at 255 n.8. As we have recognized, "clever men may easily conceal their motivations." *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1043 (2d Cir. 1979) (internal quotation marks omitted). Because discrimination claims implicate an employer's [**30] usually unstated intent and state of mind, *see Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), rarely is there "direct, smoking gun, evidence of discrimination," *Richards v. N.Y.C. Bd. of Educ.*, 668 F. Supp. 259, 265 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 1288 (2d Cir. 1988). Instead, Plaintiffs usually must rely on "bits and pieces" of information to support an inference of discrimination, *i.e.*, a "mosaic" of intentional discrimination. *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998), *abrogated in part on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1988). Again, as we made clear in *Littlejohn*, at the initial stage of a litigation, the Plaintiff's burden is "minimal" -- he need only plausibly [*87] allege facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn* at *8.

Finally, courts must remember that "[t]he plausibility standard is not akin to a "probability requirement."" *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage . . . ."); *Littlejohn v. City of New York*, No. 14-1395-cv, 795 F.3d 297, 2015 U.S. App. LEXIS 13475, 2015 WL 4604250, at *6 n.7 (2d Cir. Aug. 3, 2015) at *7. On a motion to dismiss, the question is not whether a Plaintiff is *likely* to prevail, but whether the well-pleaded

12

factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether Plaintiffs allege enough to "nudge[] their claims [**31] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678-80. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015)

A Plaintiff may prove discrimination indirectly either by meeting the requirements of *McDonnell Douglas* and showing that the employer's stated reason for its employment action was pretext to "cover up" discrimination, *see, e.g., Fisher v. Vassar Coll.*, 114 F.3d 1332, 1334 (2d Cir. 1997) (en banc), *cert. denied*, 522 U.S. 1075, 118 S. Ct. 851, 139 L. Ed. 2d 752 (1998), or by otherwise creating a "mosaic" of intentional discrimination [**32] by identifying "bits and pieces of evidence" that together give rise to an inference of discrimination, *Gallagher*, 139 F.3d at 342. At the pleadings stage, then, a Plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination. *See Littlejohn* at *7 (requiring facts "suggesting an inference of discriminatory motivation").

Here, Plaintiff has clearly met her burden of establishing the "*plausability*" that the named Defendants acted in a discriminatory manner towards Plaintiff as described in the "Factual Background" portion of her Second Amended Complaint, including preventing her from performing her job as Def. ARTEAGA's supervisor, by failing to properly investigate the false allegations made by ARTEAGA against Plaintiff, by falsely accusing Plaintiff of misconduct and ultimately by terminating her employment.

Upon the foregoing , Plaintiff has demonstrated that she has made out sufficient claims for a hostile work environment under section 1981, NYCHRL and NYSHRL and as such defendant's motion to dismiss same must be denied.

**B.  Plaintiff's Amended Complaint Pleads An Employment Relationship with Estée Lauder, Inc. Estée Lauder Companies, Inc., or Estée Lauder International Inc.**

Plaintiff, in her 2nd AC, has alleged the following in paragraphs 20-23 which properly pled the single employer doctrine as it applies to Defendants Estée Lauder Companies Inc, Estée Lauder Inc and ELC Beauty LLC:

*20. Upon information and belief, Defendant Estée Lauder Companies Inc, Estée Lauder Inc and ELC Beauty LLC maintain a single employer interrelation of operations, have centralized control of labor relations between them, including but not limited to common management, and common ownership or financial control.*

*21. Upon information and belief, Defendants Estée Lauder Companies Inc, Estée Lauder Inc. and ELC Beauty LLC, main offices are all located at the same address; 767 5th Avenue, Suite 4603, New York, N.Y. 10153,*

*22.  Upon information and belief  Defendants Estée Lauder Companies Inc, Estée Lauder Inc. and ELC Beauty LLC used rent and other income received by its subsidiaries, namely, Defendants Estée Lauder Companies Inc, Estée Lauder Inc. and ELC Beauty LLC, jointly provide services and beauty products as well as engage in in community activities.*

*23. Upon information and belief, Defendants Estée Lauder Companies Inc, Estée Lauder Inc. and ELC Beauty LLC is a family owned conglomerate with a single Board of Directors which  considered and resolved issues concerning its subsidiaries, See, e.g., United States v. Stanley, 416 F.2d 317, 318 (2d Cir. 1969) (finding "abundant evidence in the record" to support*

14

*jury's determination that parent and subsidiaries constituted a single enterprise, namely, that the corporations "were all located at the same address; production employees were shifted from one to another; [and] the bookkeeping for all was performed by the same employees").*

### Point IIC
### Plaintiff States a Plausible Claim Against Defendant Noe Arteaga

Defendants assert that Plaintiff has not plead that Arteaga had a "direct, personal involvement in discriminatory conduct, or that the Defendant 'aided and abetted' the discrimination or retaliation at issue, i.e., that the Defendant 'encouraged, condoned or approved' it." Contrary to Defendants' baseless assertions, Plaintiff's 2nd AC, list three (3) specific examples of Arteaga's discriminatory behavior towards Plaintiff (see below). Moreover, it is objectively clear that Arteaga had personal involvement in the discriminatory conduct and that he in fact "aided and abetted" ELC's discriminatory acts towards Plaintiff. By his personal discriminatory acts against Plaintiff, Arteaga encouraged, condoned and approved of the discriminatory acts taken against Plaintiff by ELC Defendants.


### Evidence of Discrimination:

#### First Complaint by Arteaga

Arteaga's act of filing a complaint against Plaintiff following a compliment on his haircut constitutes discriminatory behavior towards Plaintiff. The mere fact that a compliment led to a complaint indicates a clear animosity towards Plaintiff, underscoring the baseless nature of the grievance. The complaint is without merit and fabricated. Nonetheless, the Defendants leverage this unfounded complaint to justify Spiegel's dismissal, employing a strategy that is both misleading and artificially constructed. Despite its baselessness, this complaint was used to

support the termination of Plaintiff, reflecting a deliberate misuse of the grievance process as a tool of discrimination. Notably, Def. Arteaga only objected to compliments from Plaintiff, not from others, such as Trujillo, a distinction that further evidences that Def Areaga began a conscious campaign of harassment that was direct, personal and selectively discriminatory.

## Second Complaint by Arteaga

The second complaint involves Arteaga accusing Plaintiff of not using his preferred pronouns, despite no prior communication to her about his pronoun preferences. This accusation is unfounded since Plaintiff was never formally made aware of any such requirement. Moreover, the company, which upheld the complaint, itself used prohibited pronouns in reference to Arteaga in official documents, including his annual review which Arteaga read, after Spiegel was told she could not do this. Arteaga specifically personally targeted Plaintiff and excluded all others like Trujillo and such unmitigated targeting further enabled repeated selective discriminatory conduct.

## Wrinkled Shirt Incident

Arteaga's confrontation with Spiegel over the dress code policy, specifically regarding wrinkled clothing, further reveals discriminatory behavior. Arteaga's refusal to comply, coupled with his allegation that the dress code—and by extension, its enforcement by Plaintiff—was racist, implicates him in discriminatory practices. This accusation aimed at Plaintiff, a white woman, for adhering to company regulations, is a manifest example of discrimination based on race.

## Leaving the Racist Anti-White Book on Spiegel's Desk

Defendants' attempt to downplay the significance of Def. Arteaga leaving a racially charged book on Plaintiff's desk is misguided and seeks to impose the Court's judgment over that of the trier of fact whose province is to determine whether such a book used as it were in this

context was not an explicit and overt racially discriminatory gesture designed to harass, and thus oversteps the boundaries of a motion to dismiss. The book's content, which paragraph 26 of the complaint provides some context, advocates for "positive" discriminatory practices against White individuals as a remedy for historical injustices against Black people, is precisely a type of racially-charged object that specifically targets questions of race, age and gender orientation[1] and Defendants' attempt to gloss it otherwise is deliberate obfuscation.  It is argued that the complaint plausibly presents Arteaga as placing the book containing deliberately explosive racial and political class theories on Plaintiff's desk in order to permeate the workplace with anti-racist ideology in an attempt to shame her against her  perceived class privileges as a white cis-gender heteronormative elderly female and force her to adhere to the ideology therein.

### Third Complaint by Arteaga

This complaint against Plaintiff is evidence of direct personal discriminatory animus against Plaintiff as well.  Arteaga's complaint itself is unclear and unspecified. Plaintiff was never told anything specific. Arteaga grossly eavesdropped (See Amended Complaint). The eavesdropping problem with Arteaga was chronic and demonstrative of a personal and direct campaign of harassment predicated on perceived class features possessed by Plaintiff, to wit, being a White, cis-gender female retrograde authority, which needed to be transfigured appropriately, culminating as it were in the previously direct and personal attack upon Plaintiff's personal space by the deployment of the Kendi  anti-racist book, a quintessentially racially-charged object[2].

---

[1] The complaint makes note that Kendi's anti-racist theories are encouraged to be used to dismantle any form of White majoritarian class oppression including discrimination against gender
[2] The fact that the complaint came just before Plaintiff was wrongfully terminated, and then used as a strong basis for her termination, supports that the Defendants' failure to impose standard rules upon Arteaga served to condone his behavior and encourage a campaign of discriminatory conduct .

It is clear from the foregoing that Arteaga committed multiple acts of personal discrimination and antagonism towards Plaintiff that aided and abetted discrimination by Estée Lauder, which led to Plaintiff's termination and as such Plaintiff's complaint demonstrates that Arteaga had a direct personal involvement in discriminating against Plaintiff.

## Point IID
## Plaintiff Properly States a Claim Against Defendants for Discrimination or a Hostile Work Environment Under Section 1981, the NYSHRL or NYCHRL

The standard for establishing a hostile work environment under New York City Human Rights Law and New York State HRL is essentially the same in that Plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive - that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the Plaintiff subjectively perceived as hostile or abusive; and (3) creates such an environment because of the Plaintiff's protected characteristic, to wit her race, age and gender identity.

A Plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (alteration omitted) (internal quotation marks omitted). We have held that the assignment of "a

disproportionately heavy workload" can constitute an adverse employment action. *Feingold*, 366 F.3d at 152-53.

Plaintiff's 2nd AC alleging hostile work environment is well pleaded and should not be dismissed as it provides "at least minimal support for the proposition that the employer was motivated by discriminatory intent." 2015 U.S. App. LEXIS 13475, [WL] at *8.

Defendants in their Memorandum of Law, in essence, state that Plaintiff's allegations are minimal and non-substantive. Plaintiff strongly disagrees. Indeed, Plaintiff has asserted that: (1) that Jacobs and Miller falsely disciplined her in January 2022 for approving Arteaga's absence to conceal that Miller and Jacobs approved Arteaga's request for leave (Am. Comp. ¶¶ 47-48); (2) that Plaintiff was unfairly "singled out" and counseled to refrain from complimenting co-workers and instructed to respect Arteaga's preferred pronouns after Arteaga complained to Human Resources about Plaintiff (Am. Comp. ¶¶ 75-76, 94, 135); (3) Plaintiff was improperly removed as Arteaga's supervisor, prevented from disciplining him and delivering negative feedback during their evaluation following complaints about Plaintiff, and that Plaintiff was instead required to undergo unconscious bias training (Am. Comp. ¶¶ 54, 100-104, 106); (4) Plaintiff received unfair disciplinary counseling because she expressed her negative professional opinion of Jacobs, leading her to retain counsel and request to separate from employment (Am. Comp. ¶¶ 119-123); and (5) after Arteaga complained about Plaintiff a third time for negatively discussing him on a personal call, Plaintiff was placed on administrative leave and ultimately terminated from employment after she retained an attorney to complain about her discriminatory treatment. (Am. Comp. ¶¶ 124, 129-131). Plaintiff attempts to supplement the pleading defects demonstrating that she was written up and disciplined for conduct while Arteaga was not, and that Arteaga's placement of a book on her desk is further evidence of discrimination. (Am. Comp. ¶¶ 135, 139, 147).

Accordingly, Plaintiff has pleaded that she was plausibly treated inferiorly relative to Arteaga on account of her race, age and gender.  Plaintiff has alleged that ELC Defendants were confronted by BLM and LGBTQ activists during a time of heightened racial tension who were accusing management and ownership of discrimination and racism against Blacks and sexual minorities in their hiring and retaining policies and thus wanted to appear on the right side of the race problem at their Company. (See Am Complaint ¶ 32)

Plaintiff has alleged that ELC Defendants, ownership and management in response to the accusations of racial discrimination against said minorities made ad hoc policy decisions to amend their existing employment retention policies in order to avoid and or limit their potential economic losses threatened by activist related protests, including but not limited to hiring militant activists like Arteaga who sought to effect immediate bottom-up structural changes into the existing corporate employee behavior system. (See Am Complaint ¶ 33)

Plaintiff has alleged that Arteaga was an activist employee who would not have been hired but-for the protests by the activists and who being hired began systematically dismantling employee conduct policy by introducing and forcing racial and sexual minority activist related changes to the existing employee dress-code and conduct with management's implicit consent (See Am. Comp. ¶¶ 135, 139, 147).

Plaintiff has alleged that the Defendants' failure to officially enforce the existing employee dress-code and conduct, permitted  Arteaga to forcibly introduce new rules of conduct upon the Plaintiff that were implicitly if not expressly designed to promote a racist reckoning in the workplace and thus were inherently race and sexual minority based discrimination to facilitate a putatively positive racial change upon Plaintiff by proxy. (See Complaint ¶ 78)  )

Finally, Plaintiff has alleged that Defendants ELC, in an effort to promote a supposed inclusive workplace environment that was more welcoming to Blacks and sexual minorities, undermined the existing legal framework of employee conduct in the workplace by repeatedly failing to hold Arteaga to the same existing standards that Plaintiff was required to both adhere to and enforce as Arteaga's supervisor and were able to do so on account of Plaintiff's status as an elderly, White, cis-gender person, who offered the Defendants the perfect racial foil to scape-goat their own existing racialist shortcomings in the hiring and retaining of racial and sexual minority employees. (See Complaint)

Accordingly, Plaintiff has demonstrated that facts in the Complaint plausibly allege more than "at least minimal support for the proposition that the employer was motivated by discriminatory intent." 2015 U.S. App. LEXIS 13475, [WL] at *8. Indeed, Plaintiff has alleged that her employer was motivated by racial, albeit so-called positive discrimination (See Complaint Kendi book), that her employer made changes to the workplace (hiring Arteaga, a racial and sexual minority activist) with the explicit aim of reducing and  managing racial tensions in the workplace and to avoid racial boycotts (See Complaint paragraph 26)  that would affect the company's profits, that these changes were approved by the ownership and management (See Complaint); that these changes were not formally introduced by the management but rather implicitly adopted in an ad hoc manner whose effect resulted in multiple adverse employment circumstances for the Plaintiff culminating in her improper termination (See Complaint), and that finally, Plaintiffs termination was at least plausibly motivated by the fact that she was a cis-gender, elderly white woman who reflects majoritarian values and thus belongs to a class of persons plausibly positively discriminated against under the ad hoc employment rules being imported by Arteaga and enforced by the Defendants upon Plaintiff. (See Complaint)

Upon the foregoing , Plaintiff has demonstrated that she has made out sufficient claims for a hostile work environment under section 1981, NYCHRL and NYSHRL and as such Defendants' motion to dismiss same must be denied.

### Point IIE
### Plaintiff has Properly Pled a 1981 Retaliation Claim

Plaintiff engaged  in protected activity under Section 1981 by reporting deviant behavior by an employee to management but was then retaliated against by management who impermissibly protected Arteaga by subjecting Plaintiff to official reprimands, removal of her supervisory role over Arteaga and finally termination.  (Gomez v. City of N.Y., No. 12- CV-6409 (RJS), 2014 U.S. Dist. LEXIS 113674, at *16 (S.D.N.Y. Aug. 14, 2014)  Indeed it cannot be said that Plaintiff's complaint is merely about poor treatment unrelated to any trait when Plaintiff's complaint repeatedly sets forth that but for the fact that she was a White, cis-gender elderly female with majoritarian values Arteaga, an avowed  racial and sexual minority rights activist, would not have selectively targeted her as he did and then rely upon these very class features prominently delineated in the racially-charged book he deployed against her, to receive managerial support and finally vindication for his discriminatory targeting, in the form of Plaintiff's termination . See *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 101-103 (S.D.N.Y. 2023)

Plaintiff's termination, then, does not arise in a vacuum but is pleaded as the direct consequence of Plaintiff engaging in protected activity, to wit, seeking guidance about company policy regarding supervising a non-complying employee, and instead being subjected to repeated acts of deliberate managerial misconduct designed to protect Arteaga who was asserting contrary and arbitrary class privileges as against her.

Plaintiff thus does in fact assert that "but for" her engaging in protected activity to wit: complaining to her employer of the discriminatory behavior of her managers, and her subordinate (Arteaga) and her belonging to protected groups, i.e. cisgender, White older female, she would not have been the victim of said discrimination. (See Complaint ¶ 186). Her offer of resignation with severance from the Company was thus occasioned as a suggestion of a possible solution to the chronic and overwhelming discrimination she was experiencing, and cannot be asserted to be "an employee's request to amicably separate from employment." Indeed Defendants implicitly agree that Plaintiff's employment was impermissibly terminated  not because Plaintiff so chose to amicably leave but because she was further targeted by management with additional discriminatory treatment when she was forced to submit herself to additional acts of arbitrary and oppressive scrutiny of management at the behest of Arteaga who was by his third complaint clearly targeting Plaintiff ideologically.  Clearly here, the temporal proximity of the third complaint by Arteaga was designed as a provocative show-trial to affect a coup-de-grace to Plaintiff's employment with the blessings of management and accordingly Plaintiff asserts plausible grounds for retaliatory animus based on temporal proximity alone. *Lawtone-Bowles v. City of N.Y.*, No. 17-CV-8024 (WHP), 2019 U.S. Dist. LEXIS 25136, at *13 (S.D.N.Y. Feb. 15, 2019) (granting motion to dismiss) (internal citations omitted).

**Point IIF**
**Plaintiff has Properly plead Defendant's Negligent Hiring, Retention and Supervision**

Plaintiff has properly plead a claim of negligent hiring/retention and  supervision. Indeed, Plaintiff has  plead that (1) she was in an employee-employer relationship with Defendants; (2) that the employer  knew or should have known of the employee's propensity to cause the injury prior to its  occurrence; and (3) the tort was committed on the employer's premises or with the employer's  chattels. See Bliss v. Putnam Valley Cent. Sch. Dist., No. 06-CV-15509 (WWE),

2011 U.S. Dist. LEXIS 35485, at *27 (S.D.N.Y. March 24, 2011). Plaintiff plead that Defendants hired Arteaga as a result of pressure from aggressive activist groups threatening severe economic detriment to the Company and not because he was the type of employee best suited for his position and that management thereafter went beyond the scope of their employment  by deviating from employee protocol code of conduct to protect Arteaga, to wit by repeatedly and deliberately failing to discipline him in the face of repeated discriminatory conduct toward Plaintiff,  makes out a claim for negligent hiring, retention  and supervision. See *Pallonetti v. Liberty Mut.*,  No. 10-CV-4487 (RWS), 2011 U.S. Dist. LEXIS 14529, at * 3 (S.D.N.Y. Feb. 11, 2011)

### Point IIG
### Plaintiff has properly pled a Violation FLSA and NYLL

Defendants assert in their Memorandum of Law that to state a claim under the FLSA and NYLL, "*a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.*" *Lundy v. Catholic Health Sys. of Long Island, Inc.,* 711 F.3d 106, 114 (2d Cir. 2013)); see also *Liu v. Kueng Chan,* No. 18-CV-05044 (KAM) (SJB), 2020 U.S. Dist. LEXIS 34969, at *12 (E.D.N.Y. Feb. 28, 2020) (the "New York Labor Law do[es] not diverge from the requirements of the FLSA, and the pleading standards ... apply equally to . . . NYLL state law claims.").

However, in her 2nd AC, Plaintiff has properly plead the overtime allegations asserting she is owed approximately $65,000.00 in unpaid overtime. (See Paragraph 128).

Upon the foregoing, Plaintiff has demonstrated that she has made out sufficient claims for violation of  FLSA and NYLL and as such Defendant's motion to dismiss same must be denied.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff leave to file a Second Amended Complaint in the form of the proposed Second Amended Complaint appended as Exhibit A to the accompanying Memorandum of Law and further deny Defendants' motion to dismiss Plaintiff's Amended Complaint.

Dated: April 5, 2024
      New York, New York

                                  Respectfully submitted,

                                  By: Hugo Ortega
                                      Tanner & Ortega, LLP
                                      *Attorneys for Plaintiff*
                                        299 Broadway, Suite 1700
                                      New York, N.Y. 10007