UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
THERESA SPIEGEL,                        :
                          Plaintiff,    :
                                        :        23cv11209 (DLC)
            -v-                         :
                                        :        OPINION AND
ESTÉE LAUDER INC., ESTÉE LAUDER         :        ORDER
COMPANIES, INC., ELC BEAUTY LLC, ESTÉE  :
LAUDER INTERNATIONAL INC., LUSINE       :
JACOBS, NOÉ ARTEAGA, ANGELINA MILLER    :
and JEANNE EUGENE,                      :
                          Defendants    :
                                        :
                                        :
--------------------------------------- X

APPEARANCES:

For plaintiff:
Hugo Gabriel Ortega
Tanner & Ortega, LLP
299 Broadway, Ste. 1400
New York, NY 10007

For defendants:
Cooper Binsky
Tania Jaynelle Mistretta
Jackson Lewis P.C.
666 Third Avenue
New York, NY 10017

DENISE COTE, District Judge:

        Following the termination of her employment, the plaintiff

Theresa Spiegel ("Spiegel") brought this action against her

former employer and its employees, principally alleging

employment discrimination.  The defendants have moved to dismiss

the plaintiff's Second Amended Complaint ("SAC").  For the

following reasons, the motion is granted.

**Background**

The following facts are taken from the SAC and its attached exhibits and are assumed to be true for the purposes of this motion.

Spiegel is a 71-year-old, white, heterosexual female. She was employed by defendant ELC Beauty LLC ("Beauty") as a store manager at the Frederic Malle Greenwich Village store (the "Store") from April 2019 to November 14, 2022.

Defendants Lusine Jacobs and Angelina Miller served as Spiegel's supervisors, and defendant Jeanne Eugene worked in the Human Resources department. All three defendants were employed by Estée Lauder Companies, Inc. ("ELC Inc.") and its wholly-owned subsidiary Beauty.

Beginning in September of 2021, defendant Noé Arteaga began working at the Store as a fragerence salesperson. Arteaga is an Hispanic male in his early 20s, who the SAC describes as "strongly identified with gender orientation and identity classifications based on the LGBTQ movement." Arteaga uses the singular pronoun "they". Spiegel supervised Arteaga and, as described by the SAC, they had a contentious relationship.

According to the SAC, Arteaga was frequently late, violated the company dress code, and lied to Spiegel. Spiegel complained of Arteaga's behavior to defendants Jacobs and

2

Miller, but received minimal support in disciplining Arteaga.
Spiegel was eventually permitted to write up Arteaga for
lateness, but Arteaga continued to arrive late and Spiegel's
supervisors declined to discipline Arteaga further.

Meanwhile, Arteaga complained to Spiegel about her own
behavior.  In November of 2021, when Spiegel first instructed
Arteaga not to report to work wearing excessively wrinkled
clothing, Arteaga stated that the company policy against
wrinkled clothing was "racist" because "it is well known that
people of color like to dress like that."  When Arteaga wore
excessively wrinkled clothing in May of 2022, Spiegel did not
allow Arteaga to work that day and sent a notice of Arteaga's
suspension to Jacobs and to the Human Resources department.  On
June 7, Arteaga placed a book titled "How to Be an Antiracist"
on Spiegel's desk.

The SAC describes several instances in which Spiegel's
supervisers took actions against her because of Arteaga's
complaints about her or in connection with her supervision of
Arteaga and her management of the Store.  In January of 2022,
Spiegel received a write-up for posting, without Jacobs' prior
approval, the December and January store staffing schedules that
allowed Arteaga time off.  In posting those schedules, Spiegel
asserts that she had relied on Arteaga's representations that

Jacobs had already approved Arteaga's vacation time.  In April of 2022, Jacobs blamed Spiegel for Arteaga's low sales figures and stated that Spiegel should not be working at Beauty.  On May 11, a Human Resources representative instructed Spiegel not to give compliments to coworkers on their personal appearance, referring to a compliment Spiegel had given Arteaga.  On June 1, Jacobs informed Spiegel that she was only to address Arteaga by name or by the pronoun "they."

In June of 2022, at the request of Frederic Malle, the founder and creative director of one of the brands owned by Estée Lauder, Spiegel met with Malle.  Malle asked Spiegel about her professional opinion of Jacobs, and Spiegel provided her negative opinion.  Jacobs learned about this meeting and scolded Spiegel, saying that the meeting was "overreach."

Jacobs presented all Store employees with their written evaluations for fiscal year 2022 on July 2, 2022.  While Spiegel was praised for good performance and high sales, she was prevented from participating in Arteaga's performance evaluation.

On August 2, Spiegel was issued a Final Warning.  The warning described an incident wherein Spiegel allegedly discussed Arteaga with other Estée Lauder employees while Arteaga was assisting a client a few steps away.  Spiegel told

Jacobs and Miller that the allegations against her were false.
Spiegel retained an attorney, who notified Beauty on September
12, 2022 that due to "continued illegal harassment," a "hostile
work environment," and "illegal discrimination by her
supervisors and the Human Resources Department," Spiegel was
prepared to sue that company unless the company agreed to a
severance agreement.  Negotiations failed to resolve the matter.

On October 25, Spiegel was placed on paid administrative
leave, which continued until November 12, 2022.  Defendant
Jeanne Eugene asked to interview Spiegel about her experience
working with Arteaga.  Eugene explained that Spiegel could stop
the interview and continue with her attorney present, and
Spiegel said that she would prefer to do so.  On November 14,
Spiegel's employment was terminated due to her "inability to
meet company standards."

Spiegel filed this action in the Supreme Court of New York,
County of New York, on November 28, 2023.  On December 27, it
was removed to this district.  The defendants filed a motion to
dismiss on February 23, 2024.  On March 8, the plaintiff filed
the first amended complaint.

The defendants renewed their motion to dismiss on March 15,
2024.  On April 5, the plaintiff filed an opposition to the
motion to dismiss as well as a motion for leave to amend.  The

plaintiff sought permission to add assertions that three corporate defendants acted as a single employer.  The motion for leave to amend was granted and the defendants were instructed to respond to any new factual allegations in their reply.  The plaintiff filed the SAC on April 8.  The defendants' motion to dismiss was fully submitted on April 16.

## Discussion

A complaint survives a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) if "the facts, taken as true and with all reasonable inferences drawn in the plaintiff's favor, state a plausible claim to relief."  Sharikov v. Philips Medical Systems MR, Inc., 103 F.4th 159, 166 (2d Cir. 2024) (citation omitted). A complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  Id. (citation omitted). While the truth of the "well-pleaded factual allegations" in the complaint must be assumed, this obligation is "inapplicable to legal conclusions, such as threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements."  Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 n.3 (2007)).

I.   <u>Discrimination Claims</u>

A. Hostile Work Environment Under NYCHRL § 8-101
   and NYSHRL § 290

Spiegel's first cause of action is a hostile work
environment claim brought under the New York State Human Rights
Law ("NYSHRL"), N.Y. Exec. Law §§ 290 <u>et seq.</u>, and the New York
City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-502(a)
<u>et seq.</u>, based on her race, age, and gender orientation.
Hostile work environment claims brought under the NYSHRL must be
"construed liberally for the accomplishment of the remedial
purposes thereof, regardless of whether federal civil rights
laws, including those laws with provisions worded comparably to
the provisions of this article, have been so construed."  N.Y.
Exec. Law. § 300.  The standard of liability under the NYSHRL
will thus be treated as akin to the standard under the NYCHRL.

Under the NYCHRL, a plaintiff alleging a hostile work
environment need only show that the employer treated her "less
well than other employees, at least in part for a discriminatory
reason."  <u>Williams v. New York City Housing Authority</u>, 61 F.4th
55, 69 (2d Cir. 2023) (citation omitted).  The severity and
pervasiveness of the conduct are "relevant only to the issue of
damages."  <u>Id.</u>  (citation omitted).  The NYCHRL's provisions are
construed "broadly in favor of discrimination plaintiffs, to the
extent that such a construction is reasonably possible."

7

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). Nevertheless, the NYCHRL is "not a general civility code," and the plaintiff must show more than "petty slights and trivial inconveniences" to support a claim. Id. at 110-11 (citation omitted). The plaintiff also bears the burden of showing that the conduct complained of is "caused by a discriminatory motive." Id. at 110.

The SAC fails to plead a hostile work environment claim under either the NYCHRL or the NYSHRL. Spiegel alleges that she was treated differently than other employees because she was not permitted to compliment employees' physical appearance, was required to use employees' preferred pronouns, and was not permitted to enforce companywide rules regarding attire and personal grooming. She complains that she was required to undergo unconscious bias training, unjustly disciplined for her own supervisors' actions in approving Arteaga's request for a leave of absence, disciplined for alleged "overreach" when she complained to other employees about Arteaga and Jacobs' conduct, and that her employment was unjustly terminated.

Spiegel, however, has not plausibly alleged that she was treated less well because of her race, age, or gender. She has not alleged any facts that could constitute either direct or circumstantial evidence of a discriminatory reason for the

wrongful treatment that she complains she experienced.  Rather, the SAC alleges that Spiegel was counseled and disciplined in response to her own conduct, including for her allegedly discriminatory treatment of a subordinate.

Spiegel argues that Arteaga's complaints against her, as well as Arteaga's placement of the book "How to be an Antiracist" on her desk, constituted discrimination against her. Assuming for the moment that Spiegel could pursue these hostile work environment claims against her employer based on the conduct of a person she supervised, she has not pleaded any facts to support an allegation that Arteaga's complaints about her or actions towards her were motivated by Spiegel's own race, age, or gender.  Rather, the SAC asserts that Arteaga complained based on a belief that Spiegel was acting in a discriminatory manner towards Arteaga.  As the Second Circuit Court of Appeals has reminded us,

> a statement that someone is a 'racist,' while potentially indicating unfair dislike, does not indicate that the object of the statement is being rejected because of h[er] race.  'Racism' is not a race, and discrimination on the basis of alleged racism is not the same as discrimination on the basis of race.

Maraschiello v. City of Buffalo Police Dep't, 709 F.3d 87, 97 (2d Cir. 2013) (citation omitted) (emphasis in original). Similarly, while the SAC alleges that Arteaga complained about

Spiegel's refusal to use Arteaga's preferred pronouns and other behavior, this allegation does not plausibly plead discrimination against Spiegel on the basis of her own sexual orientation or gender identity.

Spiegel argues that her employer treated her less well than Arteaga, who she attempts to frame as a comparator.  A plaintiff may raise an inference of discrimination by showing that an employer "treated plaintiff less favorably than a similarly situated employee outside the plaintiff's protected group." King v. Aramark Services Inc., 96 F.4th 546, 563 (2d Cir. 2024) (citation omitted).  To make this showing, however, there must be "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases."  Id. (citation omitted).  While a finding that comparators are similarly situated "does not require a precise identicality between comparators and the plaintiff," such a finding does require "an objectively identifiable basis for comparability." Id. (citation omitted).

The SAC does not allege any basis to find that Arteaga is an appropriate comparator for Spiegel.  Spiegel was Arteaga's supervisor.[1]  Further, the SAC does not allege that Spiegel's own

---

[1] The defendants have also moved to dismiss all claims brought against Arteaga.  Arteaga cannot be liable on any of the pleaded causes of action.  Arteaga was not Spiegel's employer and is not

conduct was comparable to Arteaga's.  Spiegel alleges that
Arteaga's misconduct included attendance and dress code
violations, which bear little resemblance to the conduct of
which Spiegel alleges she was wrongfully accused.

Spiegel also attempts to draw a comparison between herself
and defendant Jacobs to show that she was singled out to receive
instructions to use employees' preferred pronouns.  Spiegel,
however, has not alleged that Jacobs is outside of any protected
group to which Spiegel belongs or is otherwise an appropriate
comparator.

The SAC attempts to bolster Spiegel's claim by alleging
that in 2020 Estée Lauder took actions to "appease" the Black
Lives Matter movement in response to backlash over political
donations made by Estée Lauder's Chief Executive Officer.  These
actions included a donation to the NAACP, hiring minority
employees, engaging with the LGBTQ movement, implementing
unconscious bias training, and establishing a new department to
monitor and enforce these projects.  These allegations in the
SAC are the subject of a motion to strike by the defendants.

A court may strike from a pleading any "redundant,
immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P.

---

liable under either § 1981, state or local law for the actions
of which Spiegel complains.

12(f).  Allegations may be "stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice." Brown v. Maxwell, 929 F.3d 41, 51 n.42 (2d Cir. 2019) (citation omitted).  Motions to strike under Rule 12(f) are generally disfavored; in deciding whether to strike an allegation from the pleading for impertinence or immateriality "it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976).

The Court declines to strike the material.  The allegations, however, bear faint if any relevance to Spiegel's claims.  Spiegel does not assert that she experienced any discrimination until, at the earliest, January of 2022, fourteen months after any of the events subject to the motion to strike. Nor does she assert that any of the policies or initiatives adopted in the summer of 2020 created a hostile work environment.

Spiegel has failed to sufficiently plead that she was treated "less well than other employees, at least in part for a discriminatory reason." Williams, 61 F.4th at 69.  Therefore, her claims under the NYSHRL and NYCHRL are dismissed.

B. Section 1981

Spiegel's second cause of action, for violation of 42
U.S.C. § 1981, alleges that the defendants discriminated against
her on the basis of race.[2]  Section 1981 "outlaws discrimination
with respect to the enjoyment of benefits, privileges, terms,
and conditions of a contractual relationship, such as
employment," on the basis of race.  Id. at 70.  To state a claim
under § 1981, a plaintiff must allege "facts supporting a
defendant's intent to discriminate against [her] on the basis of
[her] race."  Henry v. County of Nassau, 6 F.4th 324, 335 (2d
Cir. 2021) (citation omitted).  The plaintiff must "allege the
events claimed to constitute intentional discrimination as well
as the circumstances giving rise to a plausible inference of
racially discriminatory intent."  Id. at 336 (citation omitted).

An inference of discrimination can arise from circumstances
including, but not limited to, "the employer's criticism of the
plaintiff's performance in ethnically degrading terms; or its
invidious comments about others in the employee's protected
group; or the more favorable treatment of employees not in the
protected group; or the sequence of events leading to the

---

[2] To the extent the plaintiff seeks redress for discrimination
based on her age, gender, or sexual orientation, those claims
are not cognizable under § 1981, which addresses race and
alienage discrimination alone.  Anderson v. Conboy, 156 F.3d
167, 170 (2d Cir. 1998).

plaintiff's discharge." Littlejohn v. City of New York, 795
F.3d 297, 312 (2d Cir. 2015) (citation omitted).  A plaintiff
attempting to "show that the employer treated her less favorably
than a similarly situated employee outside her protected group
must show she was similarly situated in all material respects to
the individuals with whom she seeks to compare herself." Id.
(citation omitted).

As discussed above, Spiegel has not pleaded facts
sufficient to raise an inference of discrimination on the basis
of race.  This claim is therefore dismissed.

II.  Retaliation

Spiegel's sixth cause of action alleges that Beauty and ELC
Inc. retaliated against her for filing complaints about her
treatment, in violation of 42 U.S.C. § 1981.  Retaliation claims
brought under § 1981 are subject to the same standards as claims
under Title VII, which "prohibits an employer from
discriminating against an employee because the employee has
engaged in protected activity." Banks v. General Motors, LLC,
81 F.4th 242, 275 (2d Cir. 2023) (citation omitted).  To
establish a prima facie claim for retaliation, a plaintiff must
show that

> (1) she engaged in protected activity, (2) the
> defendant was aware of that activity, (3) she was
> subjected to a retaliatory action, or a series of
> retaliatory actions, that were materially adverse, and

(4) there was a causal connection between the
protected activity and the materially adverse action
or actions.

Carr v. New York City Transit Authority, 76 F.4th 172, 180 (2d
Cir. 2023).

Protected activity includes "opposing an unlawful
employment practice" or otherwise "making a charge" in any
manner "in an investigation, proceeding, or hearing."  Banks v.
General Motors, LLC, 81 F.4th 242, 275 (2d Cir. 2023) (citing
Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53,
62 (2006)).  "[A]ny activity designed to resist or antagonize;
to contend against; to confront; resist; or withstand
discrimination" constitutes a "protected oppositional activity."
Littlejohn v. City of New York, 795 F.3d 297, 317 (citing
Crawford v. Metropolitan Gov't, 555 U.S. 271, 276 (2009)).
"[W]hen an employee communicates to her employer a belief that
the employer has engaged in a form of employment discrimination,
that communication virtually always constitutes the employee's
opposition to that activity."  Id. (citation omitted).

For retaliation to be actionable under § 1981, however, the
retaliation must have been in response to the plaintiff's
"assertion of rights that were protected by § 1981."  Hawkins v.
1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998).
Therefore, a retaliation claim brought under § 1981 requires

that the protected activity relate to discrimination based on
race or alienage.  See Kelly v. Howard I. Shapiro & Associates
Consulting Engineers, P.C., 716 F.3d 10, 14-15 (2d Cir. 2013)
(finding that activity is only protected under Title VII if the
plaintiff "had a good faith, reasonable belief that she was
opposing an employment practice made unlawful by Title VII" and
the employer "understood, or could reasonably have understood,
that the plaintiff's opposition was directed at conduct
prohibited by Title VII.")

The SAC does not plausibly plead that the plaintiff engaged
in protected activity that is covered by § 1981, i.e., that she
opposed race discrimination.  The protected activity identified
by the SAC is a statement made by Spiegel's attorney to Beauty.
The SAC does not provide the precise language, however, that
Spiegel's attorney used.  It states only, in conclusory terms,
that Spiegel's counsel notified ELC Beauty that "due to the
continued illegal harassment, hostile work environment which was
allowed to exist at the store, as well as the illegal
discrimination by her supervisors and the Human Resources
Department," Spiegel was prepared to sue the Company unless a
severance agreement was reached.

The defendants have twice argued that this description is
insufficient to allege protected activity.  They did so in their

16

motion to dismiss the original complaint and again in their motion to dismiss the first amended complaint.  The plaintiff has amended her complaint twice and she has failed each time to identify protected activity that would support a § 1981 retaliation claim.

In opposition to the motion to dismiss the retaliation claim, the plaintiff does not engage with the failure of her pleading to identify even a general complaint made by her or her attorney to the defendants asserting that her mistreatment was due to her race.  Instead, in making her argument against dismissal she strings together a list of characteristics, including age and gender, that are not protected by § 1981.  She argues that her poor treatment by the defendants was due to the fact that she was a "White, cis-gender elderly female with majoritarian values" unlike Arteaga, who she describes as a "racial and sexual minority rights activist."  Therefore, Spiegel's claim for retaliation under § 1981 is dismissed.

III. Tort Claims

Spiegel brings two tort claims under New York State law against various defendants.  The first, against individual defendants Jacobs, Arteaga, Miller, and Eugene, is for negligent infliction of emotional distress.  The second, against defendant Beauty, is for negligent hiring, retention, and supervision.

17

These claims are barred by the New York Workers' Compensation Law, which provides an exclusive remedy for an employee's claims for negligence by a person "in the same employ."  N.Y. Workers' Comp. Law § 29(6); see also Ferris v. Delta Air Lines, Inc., 277 F.3d 128, 138 (2d Cir. 2001) (dismissing a claim of negligent retention and supervision against an employer as barred by the Workers' Compensation law); Rys v. Dubois, 189 N.Y.S.3d 221, 222-23 (App. Div. 2023) (dismissing a negligence claim against individual co-employees as barred by the Workers' Compensation law).

The plaintiff has not opposed the dismissal of her claim for negligent infringement of emotional distress.  In opposing the dismissal of her claim for negligent hiring and retention, the plaintiff does not engage with the Workers' Compensation Law or the arguments made by the defendants based on this well established principle.  These claims are therefore dismissed.

V. Wage Violation Claims

The plaintiff's fifth cause of action alleges that defendants Beauty and ELC Inc. failed to pay for overtime work as required by the federal Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  The FLSA requires a regulated employer who "employs any of his employees for a workweek longer than forty hours" to compensate that employee "at a rate not

less than one and one-half times the regular rate at which he is employed." Herrera v. Comme des Garcons, Ltd., 84 F.4th 110, 113 (2d Cir. 2023) (citing 29 U.S.C. § 207(a)(1)).  The requirement does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." Id. (citation omitted).  The NYLL imposes the same requirements.  12 N.Y.C.R.R. § 142-2.2; see Hayward v. IBI Armored Services, Inc., 954 F.3d 573, 575 (2d Cir. 2020).

In order to state a plausible claim under the FLSA and the NYLL, the Court of Appeals "demand[s] that the plaintiff provide some degree of specificity." Herrera v. Comme des Garcons, Ltd., 84 F.4th 110, 114 (2d Cir. 2023) (citation omitted).  A plaintiff must "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." Id.  It is not enough to allege that the plaintiff worked in excess of forty hours "in some or all workweeks." Id. (citation omitted).  While plaintiffs are not required to "keep careful records of the hours they worked," plaintiffs must plead their claim with "specificity" and provide "sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." Id. at 114-15 (citation omitted).

The SAC does not plausibly plead that Spiegel worked more than forty hours in a given workweek.  It does not provide any detail indicating how often Spiegel worked more than forty hours in a week or how many additional hours she worked.  Rather, it states that Spiegel worked forty hours per week and "regularly" arrived "before her scheduled start time" to perform work, without providing any detail indicating how often Spiegel arrived early, how many hours of additional work she performed, or which work tasks she performed outside of her scheduled hours.  These allegations are too vague to support a reasonable inference that Spiegel worked more than forty hours in a given week.

The defendants have twice argued that Spiegel's allegations are insufficient to plead a claim under the FLSA or NYLL.  They did so in their motion to dismiss the original complaint and again in their motion to dismiss the first amended complaint. The plaintiff has amended her complaint twice and she has failed each time to allege that she worked more than forty hours in a given week with the requisite degree of specificity.  Instead, the plaintiff added the conclusory assertion to the SAC that she worked approximately 1000 hours of overtime without proper compensation and that she is owed $65,000 in unpaid compensation.  These allegations, however, do not provide enough

specificity to state a plausible claim for a failure to pay her
overtime.  Therefore, Spiegel's claims under the FLSA and NYLL
are dismissed.

IV.  Claims Against Estée Lauder Inc. and Estée Lauder
     International, Inc.

The defendants have also moved to dismiss all claims
against Estée Lauder Inc. ("EL Inc.") and Estée Lauder
International, Inc. ("EL International").  That motion is
granted.

Spiegel asserts that she was employed by Beauty and ELC
Inc., but also names EL Inc. and EL International as defendants
in the SAC.  The plaintiff sought to file the SAC to add
allegations that EL Inc. acted as a single employer with ELC
Inc. and Beauty.  She did not ask to add allegations as to EL
International.  She was given permission to file the SAC, but
the SAC does not state a claim against either EL Inc. or EL
International.  The SAC does not attribute any conduct to either
EL Inc. or EL International, include allegations that would
sustain a claim against these defendants as her employer, or
name either defendant in any cause of action.  Spiegel has thus
failed to state a claim against these two defendants.

In her brief in opposition to this motion, the plaintiff
asserts facts regarding EL Inc. that do not appear in the SAC.
She contends that these allegations would support liability

21

under a single employer doctrine.  The Court will not, however, consider facts about this defendant that appear in Spiegel's memorandum of law but that do not appear in the SAC.  See, e.g., Fonte v. Bd. of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir. 1988).  Dismissal is particularly appropriate since Spiegel has been given two opportunities to amend her complaint, including a second opportunity in the midst of the briefing of this motion to dismiss.

## Conclusion

The defendants' March 15, 2024 motion to dismiss is granted.  The Clerk of Court is directed to enter judgment for the defendants and to close the case.

Dated:   New York, New York
         July 11, 2024

_____
DENISE COTE
United States District Judge