UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THERESA SPIEGEL,<br><br>        Plaintiff,<br><br> -against-<br><br>ESTÉE LAUDER INC., ESTÉE LAUDER COMPANIES, INC., ELC BEAUTY LLC, ESTÉE LAUDER INTERNATIONAL INC., LUSINE JACOBS, NOE ARTEAGA, ANGELINA MILLER and JENNE EUGENE,<br><br>        Defendant(s). | Civil Action No.: 23-CV-11209 (DLC) (OTW) |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and General Release (the "Agreement") is entered into by and between **ELC Beauty, LLC** (referred to throughout this Agreement as "Employer") and **Theresa Spiegel** ("Employee"). The term "Party" or "Parties" as used herein shall refer to Employer, Employee, or both, as may be appropriate.

**1.** **Recitals.**

This Agreement is made with reference to the following facts:

 (a) Employee was formerly employed by Employer;

 (b) Employee's last day of employment with Employer was November 14, 2022 ("Separation Date");

 (c) On or about November 28, 2023, Employee brought an action against Employer and Estée Lauder Companies, Inc., among others, before the Supreme Court of the State of New York, County of New York, which Employer removed to Federal Court and which is currently pending before the United States District Court for the Southern District of New York, captioned *Theresa Spiegel v. Estee Lauder Companies, Inc. and ELC Beauty, LLC*, Case No.: 23-CV-11209 (hereinafter the "Lawsuit"). In the Lawsuit, Employee asserted claims of discrimination, harassment, retaliation, intentional infliction of emotional distress, negligent infliction of emotional distress and negligent hiring, retention, and supervision which were dismissed from the Lawsuit. In the Lawsuit, Employee also asserted claims in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") which remain pending; and

 (d) There has been no determination on the merits of the FLSA and NYLL claims but, in order to avoid additional cost and the uncertainty of litigation, Employee and Employer have chosen to enter into this Agreement.

2. **Consideration/Indemnification for Tax Consequences and Liens.**

(a) In consideration for Employee signing this Agreement, and complying with its terms, Employer agrees to pay the total sum of FORTY THOUSAND DOLLARS AND NO CENTS ($40,000) (the "Settlement Payment"), to be paid as follows:

(1) One payment for alleged lost back pay and/or front pay and wages by check made payable to "Theresa Spiegel" in the amount of TWENTY-SIX THOUSAND SIX HUNDRED AND SIXTY-SIX DOLLARS AND SIXTY-SIX CENTS ($26,666.66), less applicable payroll/tax withholdings, for which Employer shall issue an IRS Form W-2 to Employee; and

(2) One payment for alleged attorneys' fees and costs by check made payable to "Tanner & Ortega, LLP" ("Employee's Counsel") in the amount of THIRTEEN THOUSAND THREE HUNDRED AND THIRTY-THREE DOLLARS AND THIRTY-FOUR CENTS ($13,333.34), for which an IRS Form 1099-MISC shall be issued to each of Employee and Employee's Counsel;

(b) Employee agrees that Employee is responsible for all applicable taxes, if any, as a result of the receipt of these monies in Paragraph 2(a)(2). Employee understands and agrees Employer is providing Employee with no representations regarding tax obligations or consequences that may arise from this Agreement. Employee, for Employee and Employee's dependents, successors, assigns, heirs, executors, and administrators (and Employee's legal representatives of every kind), agrees to indemnify and hold the Releasees (as defined herein) harmless for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Releasees in connection with such governmental authority's determination that Employer or any of the other Releasees was required to, but failed to, withhold or report the correct amount of income or employment taxes from the payments made to Employee or Employee's Counsel pursuant to Paragraph 2(a) of this Agreement. Employee agrees that Employee shall indemnify the Releasees for the full amount of such liability within thirty (30) days after receipt of notice from Employer or any of the other Releasees of the assessment of such taxes, penalties, or interest.

(c) Any settlement payments made by check set forth in this paragraph will be delivered to Employee's Counsel at 277 Broadway, Suite 1701A, New York, NY 10007.

3. **No Consideration Absent Execution of this Agreement.**

Employee understands and agrees that Employee would not receive the monies and/or benefits specified in Paragraph 2(a) above, except for Employee's timely execution of this Agreement and the fulfillment of the promises contained herein.

4. **Disbursal of Settlement Funds/Dismissal of Action.**

(a) The settlement payments described in Paragraph 2(a) will be sent within thirty (30) days after the latest of the following have occurred:

(1) counsel for Employer receives a copy of the Agreement signed by Employee;

(2) counsel for Employer receives an executed W-9 Form from Employee's Counsel;

(3) counsel for Employer receives an executed W-4 Form from Employee; and

(4) The Court issues a final approval order of the Parties' settlement dismissing the Lawsuit with prejudice.

5. **General Release, Claims Not Released and Related Provisions.**

(a) **Release of State Claims.** Upon the Court's final approval order being issued, and except as to such rights or claims as may be specifically created by this Agreement, Employee and on behalf of her respective current, former and future heirs, executors, and administrators, fully releases and discharges Employer, Employer's past, present and future direct or indirect parent organizations, subsidiaries, divisions, affiliated entities, and its and their partners, officers, directors, trustees, administrators, fiduciaries, employment benefit plans and/or pension plans or funds, executors, attorneys, employees, insurers, reinsurers and/or agents and their successors and assigns individually and in their official capacities, including without limitation Estée Lauder Inc., Estée Lauder Companies Inc., Estée Lauder International Inc., Lusine Jacobs, Angelina Miller, Jenne Eugene, and Noé Arteaga (collectively referred to herein as "Releasees"), from any and all State Law Claims.

(b) **Release of FLSA Claims.** Upon the Court's final approval order being issued, and except as to such rights or claims as may be specifically created by this Agreement, Employee, on her behalf, and on behalf of her respective current, former and future heirs, executors, administrators, agents, and attorneys, fully releases and discharges Releasees from any and all FLSA Claims.

(c) **Claims Not Released.** Employee is not waiving any rights Employee may have to: (i) Employee's own vested or accrued employee benefits under Employer's qualified retirement benefit plans as of the Separation Date; (ii) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (iii) pursue claims which by law cannot be waived by signing this Agreement; or (iv) enforce this Agreement.

(d) **Governmental Agencies.** Nothing in this Agreement or any other agreement Employee may have signed or company policy, prohibits, prevents, or otherwise limits Employee from (1) reporting possible violations of federal or other law or regulations to any governmental agency, legislative, regulatory or judicial body, or law enforcement authority (e.g., EEOC, NLRB, SEC, DOJ, CFTC, any federal agency responsible for workplace safety, U.S. Congress, or an Inspector General), (2) filing a charge or complaint with any such governmental entity, or (3) participating, testifying, or assisting in any investigation, hearing, or other proceeding brought by, in conjunction with, or otherwise under the authority of any such governmental entity. Employee is also not required to notify or obtain permission from Employer when filing a

governmental whistleblower charge or complaint or engaging or participating in protected whistleblower activity.

(e) **Collective/Class Action Waiver and Jury Waiver.** If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party. Similarly, as to any such claim against any Releasee that is not otherwise released, Employee waives Employee's right to a jury trial subject to applicable law.

6. **Procedure.** After this Agreement is executed by the Parties, subject to Employer's counsel's review of the motion for judicial approval of the settlement prepared by Employee's counsel, Employee will submit this Agreement to the Court for the Court's consideration and approval. The Court's approval of all provisions of this Agreement is a material term of this Agreement. Employee affirms that Employee believes that this settlement is fair and reasonable, and authorizes her attorney to seek from the Court approval of the settlement as fair and reasonable under the FLSA, and dismissal of the Lawsuit with prejudice.

7. **Acknowledgements and Affirmations.**

(a) Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Employer, except the Lawsuit, which is being dismissed with prejudice. Nothing in this Agreement or these Affirmations is intended to impair Employee's rights under whistleblower laws or cause Employee to disclose Employee's participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

(b) Employee also affirms that Employee has reported all hours worked as of the date Employee signs this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions, paid sick leave, predictability pay, and/or benefits which are due and payable as of the date Employee signs this Agreement and Employee has been reimbursed for all necessary expenses or losses incurred by Employee within the scope of Employee's employment. Employee further affirms that Employee has submitted expense reports for all necessary expenses or losses incurred by Employee within the scope of Employee's employment. Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act and state and local leave and disability accommodation laws.

(c) Employee further affirms that Employee has no known workplace injuries or occupational diseases.

(d) Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law. Under the federal Defend Trade Secrets Act of 2016, Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either

directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Employee's attorney in relation to a lawsuit against Employer for retaliation against Employee for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(e)     Employee further affirms that Employee has not reported internally to Employer any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud, and Employee has not been retaliated against for reporting or objecting to any such allegations internally to Employer.

(f)     Employee shall not apply for, or accept, employment or other work engagement (including, for example, as an independent contractor or temporary worker) with Employer or any Releasee under any circumstances because of, among other things, irreconcilable differences with Employer. Employee agrees that, if Employee accepts employment or other work engagement with any Releasee in contravention of this Agreement, such Releasee may terminate Employee's employment or work engagement immediately and Employee shall have no claim against such Releasee, in law or equity, related to such termination (to the fullest extent permitted by law).

(g)     Employee and Employer acknowledge Employee's rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights.

**8.     Return of Property.**

(a)     Except as provided otherwise in this Agreement or by law, Employee affirms that Employee has returned all of Employer's property, documents, and/or any confidential information in Employee's possession or control.

(b)     Employee also affirms that Employee is in possession of all of Employee's property that Employee had at Employer's premises and that Employer is not in possession of any of Employee's property.

**9.     Non-Disparagement.**

Employee agrees to refrain from making statements that are maliciously disparaging or defamatory about Releasees, or Releasees' customers, suppliers, or vendors, including but not limited to communications on social media websites such as Facebook, Twitter, LinkedIn, or Glassdoor on blogs, by text or email or other electronic means.

**10.    Neutral Reference.**

Employee agrees to direct all prospective employers who wish to inquire about Employee's employment with Employer to The Work Number® employment verification service at www.theworknumber.com or (800) 367-5690 and to use the code 13080.

11. **Medicare Secondary Payer Rules.**

Employee is eligible for and enrolled in Medicare. Employee affirms that Employee's claims against Employer do not involve any illness, injury, incident, or accident in which medical expenses were, or are expected to be, incurred. Accordingly, Employee affirms that Medicare has no interest in the payment under this settlement. Nonetheless, if the Centers for Medicare & Medicaid Services ("CMS") (this term includes any related agency representing Medicare's interests, as well as any insurance carrier providing benefits under Medicare Part C or Part D) determines that Medicare has an interest in the payment to Employee under this settlement, Employee agrees to indemnify, defend, and hold Releasees harmless from any action by CMS relating to medical expenses of Employee. Employee agrees to reasonably cooperate with Releasees upon request with respect to (i) any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, and (ii) any claim CMS may make and for which Employee is required to indemnify Releasees under this paragraph. Furthermore, Employee agrees to waive any and all future actions against Releasees for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

12. **Governing Law and Interpretation.**

This Agreement shall be governed and conformed in accordance with the laws of New York without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either Party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. Should a court declare or find the general release in this Agreement to be unenforceable for any reason, Employee agrees to sign a replacement release in a form provided by Employer.

13. **Nonadmission of Wrongdoing.**

The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

14. **Amendment.**

This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

15. **Entire Agreement.**

This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except for any arbitration, intellectual property, noncompete, restrictive covenant, non-solicitation, nondisclosure, or confidentiality agreements between Employer and Employee, including specifically the Confidentiality Agreement signed by Employee on April 9, 2019, which shall remain in full force and effect according to their terms. Employee acknowledges that Employee has not relied on any

representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

16. **Counterparts and Signatures.**

This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument. A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail, or which is made electronically, will have the same effect as the original signature.

17. **Mutual Negotiation.**

This Agreement was the result of negotiations between the Parties and their respective counsel. In the event of vagueness, ambiguity, or uncertainty, this Agreement shall not be construed against the Party preparing it. Instead, it shall be construed as if both Parties prepared it jointly.

18. **Third Party Beneficiaries.**

All Releasees are third party beneficiaries of this Agreement for purposes of the protections offered by this Agreement, and they shall be entitled to enforce the provisions of this Agreement applicable to any such Releasee as against Employee or any party acting on Employee's behalf.

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**THERESA SPIEGEL**

By: *Theresa Spiegel*

Print Name: *Theresa Spiegel*

Date: 8/27/2025

**ELC BEAUTY, LLC**

By: *Rosemarie Panza-Marcella*
Rosemarie Panza-Marcella
Vice President, Human Resources

Date: 8/28/2025